**AFFIDAVIT OF GINA M. GALANTINO IN SUPPORT OF CRIMINAL COMPLAINT**

I, Special Agent Gina M. Galantino, state:

**Introduction and Affiant Background**

1.  I am a Special Agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosive ("ATF") and have been so employed since 2020. I am currently assigned to the Boston Field Office. I am a graduate of the Federal Law Enforcement Training Center, where I completed ATF Special Agent Basic Training and the Criminal Investigator Training Program. During the course of my law enforcement career, I have participated in the execution of state and federal search and/or arrest warrants for violations of firearms and controlled substance laws.

2.  As a Special Agent for ATF, some of my duties include conducting criminal investigations into cases of illegal possession/transfer of firearms, firearms trafficking, and drug trafficking. Through my training, knowledge, and experience, I have become familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the illegal use and trafficking of firearms and controlled substances and the unlawful use or possession of firearms. I have been the affiant on affidavits in support of federal search warrants and arrest warrants. I have participated in and performed surveillance and made arrests of firearms and narcotics traffickers who utilize their electronic devices and/or computer equipment to further their illegal activity. During the course of my professional experience, I have interviewed numerous defendants, witnesses, victims, confidential informants, and other police officers regarding the illegal use and trafficking of firearms and controlled substances and the unlawful use or possession of firearms. As a result of my training and experience, and information provided to me by other law enforcement officers, I have an understanding of the various roles played by individuals or

groups involved in the trafficking of controlled substances and firearms. I have interviewed admitted drug traffickers, drug users, informants, cooperating defendants, and local, state, and federal law enforcement officers regarding the manner in which drug traffickers distribute, obtain, finance, store, manufacture, transport, and distribute illegal drugs. As such, I am familiar with the methods, routines, and practices of individuals involved in the use, sale, and trafficking of narcotics, including those involving purchasing, manufacturing, storing, and distributing controlled substances, the collection and laundering of illegal proceeds, and the efforts of persons involved in such activities to avoid detection by law enforcement. I am also familiar with the terminology and slang commonly employed by drug traffickers. I have observed and examined numerous types of controlled substances and I am familiar with the packaging, pricing structure, distribution methods, and street jargon associated with their sale and use. I have also encountered and become familiar with the various tools, methods, trends, and paraphernalia used by drug traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances.

3. Based on my training and experience as an ATF Special Agent, I am familiar with federal firearms and controlled substances laws. In this regard, I know that it is a violation of 21 U.S.C. § 841(a)(1) to possess with intent to distribute controlled substances, including marijuana. I further know that it is a violation of 18 U.S.C. § 924(c) to possess a firearm in furtherance of a drug trafficking crime. I submit this affidavit in support of an application for a criminal complaint alleging that, on or about October 8, 2023, Deondre BLANDING ("BLANDING"), and Gelson RODRIGUES ("RODRIGUES") possessed a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

2

4.      The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other investigators and witnesses. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of the requested criminal complaint. Accordingly, I have not included each and every fact known to me and other investigators involved in this investigation.

## PROBABLE CAUSE

5.      On October 8, 2023, at approximately 3:30 p.m., the Randolph Police Department received multiple 911 calls about shots fired in the area of Bonnie Lane and Gallagher Drive in Randolph. Witnesses identified that the shooting involved two males in a black Durango that stopped in the intersection of the two streets and a third male, who was in a yard on Bonnie Lane. Investigating officers found a discarded phone in the flight path of the individual who had been in the yard on Bonnie Lane. The phone was identified by investigators as belonging to BLANDING based on multiple indicators, including information within the phone.

6.      Investigators have identified BLANDING as being a member/associate of the Heath Street Gang, which originated in Boston. Prior to this shooting, investigators had identified BLANDING as being a marijuana dealer for the Heath Street Gang based on recovered electronic communications from multiple phones which involved BLANDING distributing significant amounts of marijuana. These communications identified that BLANDING distributed pound-quantity amounts of marijuana. In electronic communications recovered from a phone used by a drug associate of BLANDING, BLANDING sought the assistance of the associate to commit a "stain" in April 2022 and June 2022 – investigators involved in the ongoing investigation of the Heath Street Gang have identified that the term "stain" refers to the

3

robbery of a drug dealer.

7. BLANDING's recovered phone had electronic communications between BLANDING and an individual consistent with BLANDING arranging to purchase three pounds of marijuana on October 8, 2023, in Randolph, MA. In the messages, BLANDING and the other individual discussed the price and the type of marijuana strains to be delivered. The individual quoted BLANDING a price for the marijuana of $1350 per pound: "3 Ps gonna be 1350 each." BLANDING agreed to this price. BLANDING asked for the three pounds of marijuana to be delivered to him in Randolph: "Can I get it delivered to me? I'm all out of flower." The individual selling the drugs stated that he would have a person deliver the drugs to BLANDING in Randolph: "Send me your number my drivers on the way."

8. BLANDING thereafter had electronic communications with a phone number that investigators have identified as being used by RODRIGUES to arrange for the actual drug transaction in Randolph. During these communications, BLANDING provided an address on Mill Avenue in Randolph. At approximately 2:55 p.m., RODRIGUES communicated: "Just got to Randolph." At approximately 3:10 p.m., RODRIGUES communicated: "Ok less then 10 min" – the marijuana deal would take place in less than 10 minutes. At approximately 3:11 p.m., 19 minutes before the 911 calls for the shooting, RODRIGUES sent BLANDING an image of a police car and fire truck on Mill Road – thus identifying a problem with the location for a drug deal. A Randolph Police officer who was present on Mill Street at the time the marijuana deal was supposed to take place observed a black Durango with stipes driving down Mill Street – this aligns with the Durango being the vehicle delivering marijuana to BLANDING.

9. As noted above, the shooting was reported at approximately 3:30 p.m. Witnesses identified that they observed two men (matching the general descriptions of defendant RODRIGUES and another male ("Individual 1")) as being involved in shooting at a third man from the intersection of Gallagher Drive and Bonnie Lane. The two men were in a black Durango with stripes on it. A witness also identified that the passenger in the Durango was wearing a red shirt – Individual 1 was subsequently arrested with RODRIGUES after the shooting wearing a red shirt.

10. Recovered security camera video showed the black Durango with stripes appear at the intersection of the two streets and stop abruptly. The video further showed the driver of the Durango step out of the vehicle and begin shooting at a third man. A witness observed the third man run to a yard on Bonnie Lane, and then roll on the ground and take cover. The security video also had audio. The audio captured the driver of the Durango firing multiple shots at the third man. The audio also caught other shots being fired – consistent with the third man returning fire. Ballistic damage to the Durango is consistent with being shot at by the third man.

11. Officers recovered a wallet belonging to RODRIGUES near where the black Durango had stopped to commit the shooting. Officers identified a nearby residence associated with RODRIGUES. The residence housed other members of RODRIGUES' family. Responding officers observed a black Durango with stripes, consistent with the one used in the shooting, parked to the side and back of the house. The Durango was moved to a location near a detached garage and a tarp was placed on it. Officers also observed a different vehicle leaving the residence. The vehicle was stopped. RODRIGUES and Individual 1 were in the vehicle. Individual 1 was wearing a red shirt – consistent with being one of the two men in the Durango at

the time of the shooting.

12.     Officers froze the scene and executed a search warrant for the location and the Durango.  The black Durango had ballistic damage consistent with being used in the shooting.  In the detached garage, steps from the Durango, officers found a box that had two guns hidden in it – a 9mm Springfield Armory pistol and a Taurus .38 caliber revolver pistol.  The revolver appeared to not have been fired.  9mm casings had been recovered at the scene of the shooting where the Durango had been located – consistent with the recovered 9mm pistol.  Officers then interviewed family members of RODRIGUES in the residence.  A family member informed officers that RODRIGUES had been driving the Durango and that he had stated he was in a shooting.

13.     As noted above, the ballistic damage to the Durango and audio from the security video were consistent with the third male firing shots at RODRIGUES and Individual 1 from the yard on Bonnie Lane.  Officers recovered multiple 9mm shell casings and an unexpended 9mm round (consistent with a possible jam) in the area of the yard on Bonnie Lane where the third male had been observed.  This evidence is consistent with the male firing shots at RODRIGUES and Individual 1.  As noted above, BLANDING's cellular phone was found in the same area.  The general description of the shooter in the yard on Bonnie Lane is consistent with BLANDING, who had arranged to obtain three pounds of marijuana from RODRIGUES.

14.     Thus, the evidence supports that BLANDING and RODRIGUES were armed with firearms in furtherance of the agreed-upon three-pound marijuana transaction, and that at least two of the firearms were subsequently discharged.

## CONCLUSION

Based on the above, there is probable cause to believe that defendants Deondre BLANDING and Gelson RODRIGUES violated 18 U.S.C. § 924(c) by possessing firearms in furtherance of a drug trafficking crime.

_Gina Galantino_ DLC
Special Agent Gina M. Galantino
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me telephonically in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 on February _9_, 2024.

_____
HON. DONALD L. CABELL
CHIEF UNITED STATES MAGISTRATE JUDGE